CHARLES W. THATCHER, APPELLANT, v. JOHN C. DEUSER
ET AL., APPELLEES.

FILED APRIL 10, 1908.   No. 15,147.

Nuisance: ANIMALS: BREEDING. The business of standing stallions
    and jacks for breeding purposes in a livery barn in a village is
    not a nuisance, if the breeding business is carried on concealed
    from the view of the public, and in such a manner as not to be
    shocking to the sense of decency to those residing or having
    business in the immediate vicinity.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. Affirmed.

George A. Adams, for appellant.

Hall, Woods & Pound, contra.

GOOD, C.

Appellant, who is the owner of a hotel in the village
of Raymond, brought this action against the appellees,
who own and maintain a livery, feed and breeding stable
near the premises of the appellant in said village, to
enjoin them from keeping and standing stallions and
jacks and breeding them to mares in and about their said
barn. The appellees answered, admitting the keeping and
maintenance of their barn for the purposes alleged, but
averred that the same was kept in an orderly manner,
that the breeding of said jacks and stallions was carried
on in a quiet and orderly manner within the barn and
without the sight of the public, and denied that the main-
tenance of said barn for said purposes constituted a
nuisance. Upon a trial of the issues thus joined, the
district court found for the defendants, and dismissed
plaintiff's petition for want of equity. Plaintiff has ap-
pealed.

The evidence discloses that appellees have for a great

many years kept and operated the livery barn in question, and have kept a number of stallions and jacks therein for breeding purposes. The evidence shows that these animals were never bred, except within the barn, and that the doors were always closed, and the public excluded therefrom. The record also shows that appellant's hotel is immediately across the street from the livery barn. The particular acts complained of were the braying of the jacks and the noise made by the stallions when they were about to be used for breeding purposes, and that the stallions were led from one part of the barn through a lot and into another portion of the barn, within sight of the appellant's hotel, and that mares after being bred were immediately taken out upon the street and hitched within plain sight and view of the hotel and of its occupants and guests, and that the appearance and condition of the stallions as they were being conducted to the mares, and the mares when brought upon the street immediately after the breeding, and the neighing and squealing just preceding the breeding were shocking to the sense of decency. There is some evidence tending to sustain all these contentions. Upon the other hand, the evidence is almost overwhelming that the stallions were never conducted into the stable for breeding purposes within the sight of the hotel, and the only opportunity therefor was a possible glimpse of the horses as they were being conducted past a gate, and that when the first complaint was made this gate was boarded up so that all view of the horses was excluded. It also shows that every precaution was taken to minimize the noise, and that the noise made was not of an indecent or objectionable character, was not shocking to the sense of decency, or even annoying to those who lived in the same block. The evidence also discloses that the proprietors of the barn undertook to and substantially did enforce a rule that mares should not be taken out and hitched upon the street after being bred, and that they were usually kept in the barn for an hour or more after being bred. In addition to this

the evidence discloses that the present owner of the hotel bought the same after having lived in the village of Raymond for a number of years, knowing at the time that the barn was there and the purpose for which it was used, and that he ran the hotel adjacent to the barn and never found any fault therewith until another controversy arose, in which the appellant was several times arrested for running a pool-hall, that the appellees were members of the village board, and one of them a justice of the peace, and were instrumental in having the appellant prosecuted for the violation of a village ordinance. The evidence discloses that the appellant harbored resentment and ill will toward the appellees, and made threats that he would get even with them, and shortly thereafter instituted this action.

Upon a consideration of all the evidence, it seems apparent that the prosecution was inspired by resentment and malice, rather than by a desire to obtain just redress for a wrong suffered. It is conceded that, if the things complained of by the appellant existed, he would be entitled to relief, but upon a consideration of all the evidence, which we have carefully read, we feel impelled to say that appellant has failed utterly upon every contested issue of fact, and is entitled to no relief, unless it can be said that the keeping of a breeding stable within a village is a nuisance *per se*. We do not know of any court that has so held, nor do we conceive of any reason upon which such a holding could be made. The keeping of stallions and jacks for breeding purposes is a legitimate, proper and necessary business. They are usually kept at livery barns in villages, as being the most convenient places for carrying on the business. That such business may be carried on in such a manner as not to constitute a nuisance is beyond question; and, if it is so conducted as not to offend or shock the sense of decency and not to annoy those in the immediate vicinity, it cannot be enjoined as a nuisance. The stable involved in this controversy appears to have been so conducted.

It follows that the finding and decree of the district court is right, and should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.